IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KERI K. DRAKE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 13-CV-264-PJC |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of the ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

Claimant, Keri K. Drake ("Drake"), pursuant to 42 U.S.C. § 405(g), requests judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for disability insurance benefits pursuant to the Social Security Act, 42 U.S.C. §§ 401 *et seq*. In accordance with 28 U.S.C. § 636(c)(1) and (3), the parties have consented to proceed before a United States Magistrate Judge. Any appeal of this order will be directly to the Tenth Circuit Court of Appeals. Drake appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Drake was not disabled. For the reasons discussed below, the Court **AFFIRMS** the Commissioner's decision.

**Factual and Procedural Background**

Drake filed her application for disability insurance benefits on July 9, 2010. (R. 131-32). At the time of the hearing before the ALJ on October 26, 2011, Drake amended her asserted onset date to December 1, 2009. (R. 72).

The agency sent two requests dated August 13, 2010 and August 27, 2010 to Brian Coder, D.O., requesting all medical records of Drake from March 1, 2002 to present. Defendant's Response Brief, Dkt. #26, Attachments 1 and 2.

At the hearing, Drake testified that she had seen Dr. Coder beginning in May 2010, after having seen Dr. Coder years earlier. (R. 52-53). From 2004 to 2009, Drake had seen other physicians. (R. 53-55).

Drake testified that her headaches were the most serious problem that kept her from working. (R. 55). She had been diagnosed with fibromyalgia and experienced pain in other parts of her body. (R. 58-59).

At the hearing, Drake's attorney was asked if he had any objections to the exhibits or any additions. (R. 43). The attorney responded that he had no objections. *Id.* In an opening statement, Drake's attorney cited to two exhibits signed by Dr. Coder, Exhibits 12F and 13F, and he asked the ALJ to give Dr. Coder's findings controlling or significant weight. (R. 45-46).

The ALJ issued his unfavorable decision dated January 17, 2012, concluding that Drake had not been disabled at any time through December 31, 2009, the date last insured. (R. 20-33).

The ALJ noted Drake's testimony regarding when she saw Dr. Coder in his decision. (R. 26-27, 30). The ALJ noted that there were no progress notes in the file from Dr. Coder and that Exhibits 12F and 13F were the only two documents from Dr. Coder in Drake's Social Security file. (R. 29-30). The ALJ noted that Dr. Coder's opinion was that Drake could perform work at

a level less than sedentary work, and he included the following:

> Other records are not totally consistent with [Dr. Coder's] opinion of the severity of [Drake's] condition. Without any treatment records, it is difficult to determine the validity of his statements.

(R. 29). The ALJ found that Dr. Coder's opinions could not be given any weight because there were no progress or treatment notes in the file. (R. 30).

Drake's attorney sent a letter dated January 28, 2013, making an appeal to the Appeals Council. (R. 245). In that letter, Drake's attorney said that the problem of no treatment records for Dr. Coder had been "cured." *Id.* The Appeals Council denied Drake's appeal. (R. 1-7). The Appeals Council's denial notice states that they looked at additional evidence submitted and came to the conclusion that it did not address the relevant time period. (R. 2). The Appeals Council's denial mentioned records from the Oklahoma Heart Institute, but did not mention Dr. Coder. *Id.*

The decision of the ALJ represents the Commissioner's final decision for purposes of this appeal. 20 C.F.R. § 404.981.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Act only if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work in the national economy." 42 U.S.C. § 423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability

3

claim. 20 C.F.R. § 404.1520.[1] *See also Wall v. Astrue*, 561 F.3d 1048, 1052-53 (10th Cir. 2009) (detailing steps). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Lax*, 489 F.3d at 1084 (citation and quotation omitted).

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004) (quotation omitted).

Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion. *Wall*, 561 F.3d at 1052 (quotations and citations omitted). Although the court will not reweigh the evidence, the court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Id.*

---

[1] Step One requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. § 404.1510. Step Two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. *See* 20 C.F.R. § 404.1520(c). If the claimant is engaged in substantial gainful activity (Step One) or if the claimant's impairment is not medically severe (Step Two), disability benefits are denied. At Step Three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App.1 ("Listings"). A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to Step Four, where the claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's Step Four burden is met, the burden shifts to the Commissioner to establish at Step Five that work exists in significant numbers in the national economy which the claimant, taking into account his age, education, work experience, and RFC, can perform. *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. 20 C.F.R. § 404.1520.

**Review**

Drake's appeal is based on the two exhibits signed by Dr. Coder:

The ALJ committed reversible error by failing to give proper weight to the expert medical opinion of Dr. Brian Coder, D.O., Plaintiff's treating physician. To the extent the ALJ discounted the weight given to Dr. Coder's opinion because treatment records of this provider were missing from the record, the ALJ had a duty to re-contact this provider to obtain the missing records or seek clarification from the provider regarding the basis for his opinions.

Plaintiff's Opening Brief, Dkt. #25, p. 5. Regarding the issues raised by Drake, the Court finds that the ALJ's decision is supported by substantial evidence and complies with legal requirements. Thus, the ALJ's decision is **AFFIRMED**.

Regarding opinion evidence, generally the opinion of a treating physician is given more weight than that of an examining consultant, and the opinion of a nonexamining consultant is given the least weight. *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004). A treating physician opinion must be given controlling weight if it is supported by "medically acceptable clinical and laboratory diagnostic techniques," and it is not inconsistent with other substantial evidence in the record. *Mays v. Colvin*, 739 F.3d 569, 574 (10th Cir. 2014). *See also* 20 C.F.R. § 404.1527(c)(2). Even if the opinion of a treating physician is not entitled to controlling weight, it is still entitled to deference and must be weighed using the appropriate factors set out in Section 404.1527. *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004). The ALJ is required to give specific reasons for the weight he assigns to a treating physician opinion, and if he rejects the opinion completely, then he must give specific legitimate reasons for that rejection. *Id.*

Here, the ALJ made clear that the opinion evidence of Dr. Coder was not entitled to controlling weight. (R. 26-30). Regarding the first requirement, the ALJ noted that "[w]ithout

any treatment records, it is difficult to determine the validity of [Dr. Coder's] statements." (R. 29). Because no treatment records were submitted, it was virtually impossible for the ALJ to make a finding that Dr. Coder's opinions were well-supported by objective medical evidence, and the undersigned finds that the ALJ's statements imply that he found that Dr. Coder's opinion were not supported in this way. Regarding the second requirement, the ALJ found that the severity of Drake's conditions as reflected in the two submitted documents signed by Dr. Coder was not totally consistent with other records. (R. 29). The ALJ did not err to the extent that he found Dr. Coder's opinions not entitled to controlling weight.

Drake argues that even if Dr. Coder's opinions were not entitled to controlling weight, the ALJ was required to consider what weight should be given to those opinions, using the factors in Section 404.1527(c). The Tenth Circuit does not require that all factors be explicitly discussed by the ALJ. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Payton v. Astrue*, 480 Fed. Appx. 465, 469-70 (10th Cir. 2012) (unpublished) (affirming ALJ's rejection of treating physician opinion when reasons for not giving it controlling weight also supported giving the opinion no weight). Here, the ALJ explicitly rejected the opinion of Dr. Coder by saying that it could not be given any weight. (R. 30). The ALJ therefore was required to give specific, legitimate reasons for that rejection. *Langley*, 373 F.3d at 1119. The Section 404.1527(c) factors are:

> length of the treatment relationship and the frequency of examination;
> nature and extent of the treatment relationship;
> supportability, including citation to objective medical evidence;
> consistency with the record as a whole;
> specialization; and
> other factors brought to the ALJ's attention.

20 C.F.R. § 404.1527(c).

Here, the ALJ noted Drake's testimony that she had gone to Dr. Coder on and off for about ten years, had begun seeing him again in May 2010, and saw him every three months. (R. 26-27). The ALJ noted that Dr. Coder was Drake's primary care physician and that she had previously seen specialists. *Id.* Finally, the ALJ noted that the other evidence in the record did not support the degree of severity reflected in Dr. Coder's opinion. (R. 29). Thus, the ALJ did, in fact, discuss many of the factors in Section 404.1527(c), even if he did not explicitly reference that section in his discussion.[2] The ALJ's discussion of Dr. Coder's opinions and his reasons for rejecting those opinions were adequate. *See, e.g., Sawyer v. Barnhart*, 89 Fed. Appx. 148, 151-52 (10th Cir. 2004) (unpublished) (affirming ALJ's rejection of family doctor's opinion in part due to "the limited back treatment provided by [the treating physician] and her cursory treatment notes"); *Calhoun v. Barnhart*, 85 Fed. Appx. 678, 685 (10th Cir. 2003) (unpublished) (affirming rejection of treating physician opinion when his treatment of the claimant was limited to recording her subjective complaints and prescribing medication).

In addition to her argument that the ALJ erred in giving Dr. Coder's opinions no weight, Drake asserts that, under the circumstances presented by this case, the ALJ had a duty to recontact Dr. Coder to attempt to obtain treating records. Plaintiff's Opening Brief, Dkt. #25, pp. 7-10. Drake bases her argument in part on the circumstance that the ALJ's rejection was explicitly attributed to the lack of treating records in the file. *Id.* Drake's argument fails for numerous reasons. As noted above, the agency had made two attempts in August 2010 to obtain records from Dr. Coder. This fulfilled the agency's duty. 20 C.F.R. § 414.1512(d).

---

[2] The Tenth Circuit has often stated that the court takes the ALJ at his word when he states that he has considered all of the evidence. *Wall*, 561 F.3d at 1070. Here, the ALJ specifically stated that in determining Drake's RFC, he considered all of the opinion evidence in accordance with the applicable regulations and Social Security Rulings. (R. 26).

7

The undersigned finds that the ALJ did not have a duty to make a third attempt to obtain Dr. Coder's treating records. Drake argues that the ALJ did have such a duty pursuant to the regulation in place at the time of the ALJ's decision, citing 20 C.F.R. § 404.1512(e).[3] Former section 404.1512(e) stated in pertinent part:

> We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical or laboratory diagnostic techniques.

20 C.F.R. § 404.1512(e)(1) (effective until March 25, 2012). Drake did not cite subparagraph (2) which stated:

> We may not seek additional evidence or clarification from a medical source when we know from past experience that the source either cannot or will not provide the necessary findings.

20 C.F.R. § 404.1512(e)(2) (effective until March 25, 2012). The undersigned finds that the previously-effective language from Section 404.1512(e) did not require the ALJ here to recontact Dr. Coder. First, the ALJ's reason for rejecting Dr. Coder's opinion was that no treating records accompanied the documents and thus it was "difficult to determine the validity of his statements." (R. 29). This reason does not literally fall within the seemingly mandatory requirement of the language quoted above. Second, even if the ALJ's reason could be found to be within the quoted language of subparagraph (1), subparagraph (2) excuses the duty to recontact if the agency knows from past experience that the source will not provide the information. Subparagraph (2) is applicable here, where the agency had already twice requested treating records from Dr. Coder.

---

[3] This regulation changed effective March 26, 2012. *See Borgsmiller v. Astrue*, 499 Fed. Appx. 812, 816 n.4 (10th Cir. 2012) (unpublished).

8

Further, another circumstance that affects the ALJ's duty here is that Drake has failed to provide any treating records of Dr. Coder even though she has had numerous opportunities to do so. When a claimant is represented by counsel, the ALJ can ordinarily rely on counsel to structure and present the claimant's case. *Hawkins v. Chater*, 113 F.3d 1162, 1166-67 (10th Cir. 1997). Here, Drake submitted the two exhibits from Dr. Coder and certainly was aware that there were no treating records of Dr. Coder among the exhibits at the time of the hearing before the ALJ. Drake's attorney did not raise the issue of Dr. Coder's treating records with the ALJ and did not state that he had additional evidence to submit or that he requested assistance from the ALJ in obtaining records from Dr. Coder. (R. 43). In making a submission to the Appeals Council, Drake's attorney submitted additional evidence and said that the absence of treating records from Dr. Coder had been "cured." (R. 245). Now, Drake asks that this Court remand so that Drake may have the opportunity to provide treating records from Dr. Coder.

A remand is not required under these circumstances. While in *Maes v. Astrue*, 522 F.3d 1093, 1097 (10th Cir. 2008), the Tenth Circuit ultimately found that the ALJ had a duty to recontact the claimant's physicians, the undersigned finds the following language from *Maes* to be applicable here:

> Although the ALJ has a duty to develop the record, such a duty does not permit a claimant, through counsel, to rest on the record - indeed, to exhort the ALJ that the case is ready for decision - and later fault the ALJ for not performing a more exhaustive investigation.

*Id.*

In summary, the ALJ's decision, including his finding that Dr. Coder's opinions were entitled to no weight, was supported by substantial evidence and complied with legal requirements. The ALJ did not have a duty to recontact Dr. Coder under the circumstances of

9

this case, and this Court is not required to grant a remand so that Drake can have an additional opportunity to provide treating records of Dr. Coder.

## Conclusion

The decision of the Commissioner is supported by substantial evidence and complies with legal requirements. The decision is **AFFIRMED**.

Dated this 29th day of May 2014.

Paul J. Cleary
United States Magistrate Judge